UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEDVEND, INC.

       Plaintiff,                        CIV. NO. 13-10619

       v.                                HON. TERRENCE G. BERG

YRC, INC., d/b/a YRC
FREIGHT,

       Defendant.
_____/

**OPINION AND ORDER DENYING YRC'S MOTIONS
FOR PARTIAL SUMMARY JUDGMENT (DKTS. 18, 27)**

This is an action against a freight shipping company for damage caused to cargo. Plaintiff Medvend, Inc. ("Medvend") contracted with Defendant YRC, Inc. ("YRC") to ship three automated medication dispensing machines from Florida to Michigan and they were allegedly damaged in transit. YRC has filed two motions for partial summary judgment (Dkt. 18, 27), arguing in the first motion that, under a provision of the Interstate Commerce Act known as the Carmack Amendment, 49 U.S.C. § 14706, et seq., Plaintiff's damages are subject to limitation of liability clause referenced in the bill of lading; and in the second motion, that Medvend's damages are limited due to an initial loss and damage claim form submitted by Medvend to YRC.

The Court held oral argument on YRC's first motion for partial summary judgment on November 20, 2013. As to YRC's second motion for partial summary

judgment, the issues have been adequately presented in the parties' briefs and oral argument would not significantly aid the decision making process. *See* E.D. Mich. LR 7.1(f)(2). This second motion will therefore be decided on the briefs. For the reasons set forth below, both of YRC's motions for partial summary judgment are **DENIED**.

## I. BACKGROUND

At issue in YRC's first motion for partial summary judgment (Dkt. 18) is whether YRC effectively limited its liability in accordance with the Carmack Amendment. The Carmack Amendment, discussed in greater detail below, generally requires that freight carriers must pay the actual value of the damage to cargo unless they give the shipper a choice between two or more rates and thereby limit their liability. The parties dispute whether YRC was required to provide Medvend with an opportunity to choose between two or more rates and, if so, whether YRC met that requirement.

YRC argues that its liability is limited to ten dollar ($10) per pound for the 2,250 pounds of goods that it was carrying for Medvend based on language contained in the bill of lading. Specifically, YRC claims the bill of lading in this case provides as follows:

CUSTOMER AGREES TO THE ORGANIZATION'S TERMS AND CONDITIONS, WHICH CAN BE FOUND AT WWW.FREIGHTPAYMENTCENTER.COM

YRC further claims that the "terms and conditions," allegedly available on the website www.freightpaymentcenter.com, provide as follows:

> The Company will use the individual carrier's governing General Rules Tariff which determines the standard liability cargo insurance coverage offered by all carriers ....
>
> \*\*\*
>
> In no case will the maximum cargo liability for new goods be greater than $100,000 for a Truckload shipment or $10 per pound for an LTL shipment. In no case will the maximum cargo liability for used or resold goods be more than $0.10 per pound for any shipment. The Company does offer for purchase by the Customer, upon request, shipper's interest cargo insurance.[1]

The parties do not dispute that this was an "LTL" (or, less than truckload) shipment. Thus, based upon this language, YRC asserts that – if YRC is liable to Medvend – YRC's liability is limited to a total of $22,500 ($10/lb. x 2,250 lbs.). Medvend, on the other hand, argues that YRC is liable for the total value of the machines or the cost to repair them. It is unclear from Medvend's pleadings how it intends to quantify its damages, but Medvend appears to be seeking damages in the range of $135,000 (cost to repair the machines) to $205,000 (value of the machines on the open market). Medvend responds that YRC failed to limit its liability to the $10 per pound because YRC failed to offer Medvend the opportunity to choose between rates, that is, to pay a lower rate with a lower amount of liability coverage or to pay a higher rate with a greater amount of liability coverage.

In YRC's second motion for summary judgment (Dkt. 27), YRC argues, in the alternative to its first motion, that Medvend's liability should be limited to the amount Medvend listed on a "Standard Form for Presentation of Loss & Damage

---

[1] YRC has not submitted any evidence to prove that this language was in fact posted on this website during the time-frame in question, December 2010. The Court visited this website shortly before the hearing in this matter in November 2013, and again on May 21, 2014, and could not find this limitation of liability of language.

3

Claims" form – $45,000 (Dkt. 27, Ex. G).  Medvend presented this form to YRC on January 31, 2011, less than one month after the allegedly damaged goods were delivered in Michigan, on January 4, 2011.  *Id.*  An inspection of the machines occurred later, on February 16, 2011 (Dkt. 28 at 6).  Medvend claims that the inspection report determined that the estimated repair costs were "over $40,000" for each of the three machines, for a total of over $120,000 (Dkt. 28, Ex. 3).  Medvend provided YRC with copies of these inspection reports.  *Id.*

## II. ANALYSIS

### A.  *The Standard for Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56.  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion

"must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### B.  *YRC failed to satisfy its obligation to provide Medvend with a fair opportunity to choose between more than one rate of liability.*

The main issue in YRC's first motion for partial summary judgment is whether there is a valid limitation of liability.  Under the Carmack Amendment, as a general rule, a motor carrier is liable for the actual loss of or damage to freight it is carrying.  *See* 49 U.S.C. § 14706(a)(1).  An exception to the rule is found at 49 U.S.C. § 14706(c)(1)(A).  The exception allows carriers to limit their liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and the shipper if that value would be reasonable

5

under the circumstances surrounding transportation." 49 U.S.C. § 14706(c)(1)(A). To limit its liability to an amount less than the actual value of the lost or damaged goods, the Carmack Amendment requires that the carrier provide to the shipper upon request "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to the shipment, or agreed to between the shipper and the carrier is based." *Id*. § 14706(c)(1)(B). These provisions, particularly the statute's requirement that the limitation of liability be "reasonable under the circumstances surrounding the transportation" have been interpreted as embodying the common law principle that liability may be limited by an agreement that allows the shipper to choose among two or more rates proportionate to the risk. *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 324 F. Supp. 2d 713, 721-22 (W.D. Pa. 2004), citing *Tokio Marine & Fire Ins. Co. v. Amato Motors*, 996 F.2d 874, 876 (7th Cir.1993) ("Congress incorporated common law principles relating to liability of interstate carriers in the Carmack Amendment to the Interstate Commerce Act.").

Two Sixth Circuit cases discuss this issue – *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir. 1998) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). Medvend argues that YRC's bill of lading does not effectively limit liability in this case. To limit liability, Medvend insists, a carrier must give the shipper a fair opportunity to choose between two or more levels of liability and must obtain the shipper's written agreement as to its choice of liability, and YRC provided no such notice, nor did it obtain Medvend's written agreement to

6

limit liability. Medvend argues that the only notice YRC provided of a limitation of liability was referenced in the bill of lading, directing Medvend to the website www.freightpaymentcenter.com. Medvend claims that, under the Sixth Circuit's holding in *Toledo Ticket*, this language fails as a matter of law to provide the required opportunity to choose between two levels of liability. Thus, according to Medvend, YRC may not rely on the terms and conditions referenced in the bill of lading.

As a preliminary matter, the Court notes that YRC did not present the Court with any evidence that the website www.freightpaymentcenter.com was functional and contained the language at issue during the time-frame in question, December 2010. As such, YRC has not satisfied its initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). YRC's first motion for partial summary judgment must be denied on this basis alone.

Second, in *Toledo Ticket*, the Sixth Circuit rejected a carrier's argument that it gave the shipper a reasonable opportunity to choose between levels of liability when it included liability limiting language on its bill of lading. *Toledo Ticket* held that the language used on the bill of lading was insufficient to give the shipper a fair opportunity to choose between levels of liability, explaining that a carrier must provide both reasonable notice of any options that would limit liability and the opportunity to obtain information about the options that "will enable the shipper to make a deliberate and well-informed choice." *Toledo Ticket*, 133 F.3d at 442. The

Sixth Circuit held that allowing carriers to limit liability, was "a very narrow exception to the general rule ... requiring that the carrier be liable for the actual value of the shipper's property," *Id*. at 442 (citations omitted). *Toledo Ticket* held that four requirements must be met for a carrier to limit its liability, a carrier must: (1) maintain approved tariff rates with the ICC; (2) provide the shipper with a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to his choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Id*.

The parties disagree over whether certain language in the 1995 legislative changes (the ICC Termination Act of 1995) to the Carmack Amendment implicitly overruled *Toledo Ticket*.[2] This language provides that "[i]f the motor carrier is not required to file a tariff with the Board, it shall provide ... *on the request of the shipper,* a written or electronic copy of the rate classification rules and practice ...." 49 U.S.C. § 14706(c)(1)(B) (emphasis added). The previous version of the Carmack Amendment did not contain a provision stating that the carrier had to provide a copy of the rate classification rules "on the request of the shipper."

Courts in the Southern District of Ohio and Western District of Tennessee have concluded that, in light of the 1995 changes to the Carmack Amendment, *Toledo Ticket* is no longer good law. *See Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Flash Expedited Servs., Inc.*, 12-1057, 2013 WL 4010312 (S.D. Ohio Aug. 6, 2013);

---

[2] *Toledo Ticket* was based on events which transpired prior the 1995 amendments to the Carmack Amendment even though the opinion was issued after the amendments took effect. The Sixth Circuit has not yet addressed the question of the effect of the 1995 amendments on its holding in *Toledo Ticket*.

8

*EFS Nat'l Bank v. Averitt Exp., Inc.*, 164 F. Supp. 2d 994, 1001 (W.D. Tenn. 2001). *EFS Nat'l Bank* ultimately held that the purpose of the ICC Termination Act was to put the onus on shippers (not carriers) to define the limits of liability.

Other courts have disagreed. *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 324 F. Supp. 2d 713 (W.D. Pa. 2004); *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 842 (11th Cir. 2003). In *Emerson Electric*, a lengthy and detailed discussion of the historical development of the Carmack Amendment and its 1995 revisions, the district court found that *Toledo Ticket* is still good law. This ruling was affirmed by the Third Circuit. *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.,* 451 F.3d 179, 182 (3rd Cir. 2006). The Court agrees with the approach taken by *Emerson Electric*. The Sixth Circuit has not clarified the impact of the 1995 changes to the Carmack Amendment on its holding in *Toledo Ticket*. Until the Sixth Circuit rules that the 1995 revisions to the Carmack Amendment undercut its ruling in *Toledo Ticket*, the most prudent course is to continue to follow the guidance of *Toledo Ticket*.

As such, the Court holds that the requirement to provide a reasonable opportunity to choose between levels of liability has survived the 1995 changes to the Carmack Amendment. *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186–87 (3rd Cir. 2006) ("[A] carrier must continue to offer two or more rates with corresponding levels of liability in order to successfully limit its liability pursuant to the Carmack Amendment.") This is the approach that has also been taken by the Eleventh Circuit Court of Appeals. *See Sassy Doll Creations, Inc.*

9

*v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 842 (11th Cir. 2003) ("Notwithstanding the amendments to the Carmack Amendment, a carrier wishing to limit its liability is still required to give the shipper a reasonable opportunity to choose between different levels of liability"). A recent decision in the Southern District of New York holds likewise. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 11-3238, 2014 WL 988585 *12–16 (S.D.N.Y. Mar. 13, 2014).

YRC has not presented any evidence that it gave Medvend "a reasonable opportunity to choose between different levels of liability." Thus, YRC's first motion for partial summary judgment must be denied.

### C. Medvend's damages are not limited by its initial claim for $45,000

In its second motion for partial summary judgment (Dkt. 27), YRC argues that Medvend's claim should be limited to the amount that Medvend listed on its initial written claim to YRC – $45,000. YRC relies on 49 C.F.R. § 1005.2[3], and a Fifth Circuit case, *Williams v. N. Am. Van Lines of Texas, Inc.*, 731 F.3d 367, 369 (5th Cir. 2013). This argument is also without merit.

It is far from clear that the Fifth Circuit's holding in *Williams* even supports YRC's position. First, the language in *Williams* that YRC relies upon – that "[t]he purpose of [49 C.F.R.] § 1005.2[] is to prohibit a plaintiff from claiming an amount greater than that specified in her original claim later in the proceedings" *Id.* at 369 – appears to be dicta. The holding of *Williams* was that the claimant was not

---

[3] Under the Department of Transportation regulations controlling claims for loss or damage to property transported by common carriers, notice of a claim must: "(1) Contain[ ] facts sufficient to identify the baggage or shipment (or shipments) of property, (2) assert[ ] liability for alleged loss, damage, injury, or delay, and (3) mak[e] [a] claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 1005.2(b).

required both to specify the total amount and itemize the value of the components of a claim.

Second, a controlling, published, Sixth Circuit case – not cited by YRC in its motion for partial summary judgment – directly undercuts YRC's argument, holding that:

> It would appear that the purposes of the regulation requiring the filing of a written claim form—(1) identifying the lost or damaged baggage; (2) asserting liability for loss; and (3) requiring a "specified or determinable" amount of loss—are to provide the carrier with notice of the nature of the baggage or property that is lost or damaged, the fact that the claimant intends to hold the carrier responsible, and a reasonably accurate indication of the value of the claim. In many cases, the claimant may not know the specific value of the article or articles that are lost or damaged, and may require some time to obtain that information; indeed, it appears this is such a case. We agree with the view articulated by the Ninth Circuit [*Insurance Co. of N. Am. v. G.I. Trucking Co.*, 1 F.3d 903 (9th Cir.1993) (holding that written claims are to be construed liberally and that the standard for determining the sufficiency of a claim is one of substantial performance)], that the purpose of the claim regulation is not to permit the carrier to escape liability but to insure that the carrier has enough information to begin processing the claim.

*Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 713 (6th Cir. 1999). *Trepel* further stated that "'property loss regulations are very informal. A claim need only contain sufficient facts to identify the goods, assert liability, and ask for money damages.'" *Trepel* , 194 F.3d at 713, quoting *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 545 (6th Cir. 1986).

The Court holds that Medvend's initial claim – submitted approximately one month after the delivery of the allegedly damaged goods, and before Medvend had

the opportunity to completely quantify its damages – satisfied the regulation's requirement of giving notice to YRC, providing "enough information to begin processing the claim." Furthermore, approximately two weeks after Medvend submitted its initial claim, the parties conducted an inspection of the machines and, Medvend claims, the results of that inspection revealed the estimated repair costs at "over $40,000," per each of the three machines, for a total of over $120,000. This inspection report – based upon a more complete review of the machines – was delivered to YRC well within the nine month time-limit set by YRC for submitting claims. As such, the Court finds that Medvend's damages are not limited to the amount it listed in the initial claim form, and YRC's second motion for partial summary judgment (Dkt. 27) is denied.

### III. CONCLUSION

For the reasons set forth above, YRC's motions for partial summary judgment (Dkt. 18, 27) are **DENIED**.

**SO ORDERED.**

s/Terrence G. Berg<br>
TERRENCE G. BERG<br>
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2014

Certificate of Service

I hereby certify that this Order was electronically submitted on May 30, 2014, using the CM/ECF system, which will send notification to each party.

s/A. Chubb<br>
Case Manager